## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

| | |
|---|---|
| TAKIEM EWING, ANTONIO GARCIA-HERRERA, JOHNNY JEAN, and JAVIER JOVEL-AGUILAR, on behalf of themselves and all others similarly situated, | Civil Case No. _____ <br><br> **JURY TRIAL DEMANDED** |
| *Plaintiffs*, | |
| v. | |
| PAMELA BONDI, Attorney General of the United States, WILLIAM K. MARSHALL III, Director of the Federal Bureau of Prisons, ROY CHEATHAM, Warden of USP Coleman II, and EUGENE "E.K." CARLTON, Warden of USP Coleman II, in their official capacities, | |
| *Defendants*. | |

## CLASS ACTION COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF
## NATURE OF THE ACTION

1.     Plaintiffs and the putative class they seek to represent are people incarcerated at United States Penitentiary Coleman II ("Coleman II"), a federal prison operated by the Federal Bureau of Prisons ("BOP"). At Coleman II, the tap water is polluted with illness-causing contaminants and unfit for human consumption. It is discolored, often appearing brown, yellow, or green, and smells and tastes contaminated. When Plaintiffs drink the tap water, they suffer from headaches, stomach pains, diarrhea, dizziness, fatigue, rashes, and other symptoms. They also

risk contracting serious bacterial infections that can lead to stomach ulcers, lung failure, kidney failure, septic shock, stomach cancer, and death.

2.      The staff members at Coleman II—from correctional officers to medical staff to the Warden himself—know that the tap water is unsafe to drink. Staff members at Coleman II refuse to drink the tap water and routinely warn residents not to drink it because it poses a health threat. Staff members instead bring large bottles of clean water into the facility every day to drink. But Coleman II staff do not provide any clean drinking water to Plaintiffs and other Coleman II residents.

3.      This is an action brought by Plaintiffs on behalf of themselves and the putative class they represent, individuals who currently, or will in the future, reside at Coleman II. This action seeks declaratory and injunctive relief to remedy the deliberate indifference and failure of Defendants to provide Coleman II residents with potable water in compliance with the federal Safe Drinking Water Act ("SDWA") (*i.e.*, 42 U.S.C. §§ 300f – 300j-27) and sufficient to satisfy the minimum standards under the Eighth Amendment of the United States Constitution.

## PARTIES

4.      Plaintiffs Takiem Ewing, Antonio Garcia-Herrera, Johnny Jean, and Javier Jovel-Aguilar are currently incarcerated at Coleman II.

5.      Defendant Pamela Bondi ("Defendant Bondi") is the Attorney General of the United States. The Attorney General is the head of the United States Department of Justice, which oversees the BOP. Defendant Bondi is sued in her official capacity.

6.      Defendant William K. Marshall III ("Defendant Marshall") is the Director of the BOP. The Director is responsible for the operation of 122 BOP facilities, including Coleman II. Defendant Marshall is sued in his official capacity.

2

7.     Defendant Roy Cheatham ("Defendant Cheatham") is or was the Warden of Coleman II. He is or has been responsible for overseeing the operations at Coleman II. Defendant Cheatham is sued in his official capacity.

8.     Defendant Eugene "E.K." Carlton ("Defendant Carlton") is or was the Warden of Coleman II. He is or has been responsible for overseeing the operations at Coleman II. Defendant Carlton is sued in his official capacity.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and the laws of the United States. Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this judicial district, and all or substantially all of the events, acts, or omissions giving rise to claims for class relief occurred in Sumter County, Florida, in the Middle District of Florida.

## ADMINISTRATIVE EXHAUSTION

11.     Each Plaintiff has completed the BOP's Administrative Remedy Program and exhausted the remedies available to them as required by 42 U.S.C. § 1997e(a).

12.     On June 9, 2025, undersigned counsel notified Mr. Lee Zeldin, Administrator of the U.S. Environmental Protection Agency ("EPA"), Defendant Marshall, and Ms. Alexis A. Lambert, Secretary of the Florida Department of Environmental Protection ("FLDEP") of the intent to commence a civil action regarding violations of the Safe Drinking Water Act. *See* 42 U.S.C. § 300j-8(b). Counsel did not receive a response. The sixty-day notice period lapsed on August 8, 2025.

13.     Accordingly, each Plaintiff has exhausted all obligatory administrative remedies and their claims are legally ripe for presentation in this civil action.

## FACTUAL ALLEGATIONS

### A.   Polluted Tap Water at Coleman II is Unfit for Human Consumption.

14.     Coleman II is one of four federal correctional facilities located at the Coleman Federal Correctional Complex ("FCC Coleman") in Sumter County, Florida.

15.     FCC Coleman consists of 29 interconnected buildings on a 120-acre site.[1] Upon information and belief, FCC Coleman provides water for human consumption through pipes to at least 15 service connections and to thousands of residents of the four correctional facilities located there, including Coleman II.

16.     Coleman II is a high-security facility that houses approximately 1,048 adults.[2]

17.     The water at Coleman II often appears brown, green, or yellow as it comes out of the tap or drinking fountain. When a Coleman resident fills a white Styrofoam cup with tap water and drinks it, the discolored water leaves behind a dark-colored ring of residue in the cup. Other times, after a Coleman II resident drinks a cup of tap water, an oil-like residue settles at the bottom of the cup. Often there is sediment visible to the naked eye floating in the water.

18.     The unpalatable, chemical tasting water repulses anyone forced to drink it because it smells like rotten eggs and human waste.

---

[1] Clark Construction, *Coleman Federal Correctional Complex*, https://www.clarkconstruction.com/our-work/projects/coleman-federal-correctional-complex (last visited August 19, 2025).

[2] *See* Federal Bureau of Prisons: USP Coleman II, https://www.bop.gov/locations/institutions/clp/ (last visited Aug. 19, 2025).

19. After consuming the water, Coleman II residents suffer from headaches, diarrhea, weight loss, bloating, nausea, stomach cramping and pains, fatigue, muscle aches, and vomiting. For many residents, their symptoms become especially acute immediately after they drink the water, sometimes causing diarrhea and other gastrointestinal distress within hours of consumption.

20. Upon information and belief, the symptoms experienced by these residents are caused by contaminants in Coleman II's drinking water, including, for example, microbial contaminants like *Cryptosporidium*, fecal coliform, *E. coli*, *Giardia lamblia*, *Legionella*, and H. pylori.

21. On November 15, 2021, Warden R.C. Cheatham sent a memo to Coleman II residents stating that a resident "was diagnosed with legionella pneumonia," "a type of lung infection which is caused by breathing in droplets of water containing the legionella bacteria." Upon information and belief, more Coleman II residents have suffered from the same ailment since November 2021.

22. Some Coleman II residents have experienced pneumonia-like symptoms that persist for months. Upon information and belief, those residents contracted Legionnaires' disease, a severe type of pneumonia caused by *Legionella* bacteria that causes symptoms such as cough, shortness of breath, chest pain or discomfort, high temperature, and flu-like symptoms.

23. If left untreated, Legionnaires' disease can lead to serious complications including lung failure, septic shock, acute kidney failure, and death. And although promptly treating Legionnaires' disease with antibiotics often cures the disease, some people continue to suffer from lingering symptoms.[3]

---

[3] Mayo Clinic, *Legionnaires' disease* (Apr. 19, 2025), https://www.mayoclinic.org/diseases-conditions/legionnaires-disease/symptoms-causes/syc-20351747.

24.    The *Legionella* bacteria that cause Legionnaires' disease can grow in human-made water systems, including drinking water systems. Most people become infected with the bacteria when they breathe in water droplets containing the bacteria.[4]

25.    Upon information and belief, Coleman II residents who have contracted Legionnaires' disease became infected with the *Legionella* bacteria from the contaminated tap water at Coleman II.

26.    Residents have also suffered from stomach infections caused by the *Helicobacter pylori* bacteria ("H. pylori"). H. pylori infections cause stomach pain, bloating, gas, and other symptoms. In approximately 10% to 15% of infections, peptic ulcers develop in the lining of the stomach or small intestine. H. pylori is also a strong risk factor of certain types of stomach cancer.[5]

27.    H. pylori bacteria often spread through contaminated water, especially in crowded living conditions like prisons and other carceral settings.[6]

28.    Upon information and belief, Coleman II residents who have contracted H. pylori became infected with the H. pylori bacteria from the contaminated tap water at Coleman II.

29.    Although residents know that the Coleman II tap water is unfit for human consumption, they are forced to drink it and suffer the physical consequences because they often have no other options.

30.    The only safe drinking water available to Coleman II residents comes with a price tag most cannot afford. The Coleman II commissary sells bottles of water

---

[4] *Id.*

[5]    Mayo Clinic, *Helicobacter pylori (H. pylori) infection* (June 14, 2025), https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171.

[6] *Id.*

for $0.80 a unit. Residents fortunate enough to have the funds to buy bottled water are permitted to purchase only twelve bottles per week, which forces them to choose between dehydration and supplementing their clean water consumption with contaminated tap water.[7]

31.    Residents housed in isolation in the Special Housing Unit ("SHU") are not permitted to access the commissary at all and thus have no access to bottled water, even if they could pay for it.

32.    Residents in general population are denied access to the commissary when the facility is locked down, which happens frequently.[8]

33.    Residents who cannot purchase bottled water have no choice but to drink tap water. Some residents collect cups of hot water provided in the housing units' common areas—known colloquially as "190 water" because it is heated to 190 degrees Fahrenheit—and allow the water to cool before drinking it, in hopes that the heat will eliminate some of the contaminants in the water. But the discoloration, sediment, and oily residue remain despite their best efforts.

34.    Residents housed in the SHU do not have access to 190 water.

---

[7] An adequate daily fluid intake for an average adult male is about 15.5 cups (3.7 liters). *See* Mayo Clinic, *Water: How much should you drink every day?*, https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/water/art-20044256#:~:text=The%20U.S.%20National%20Academies%20of,fluids%20a%20day%20for%20women (last visited August 19, 2025).

[8] *See, e.g.*, District of Columbia Corrections Information Council, *Report on Findings and Recommendations* at 6-7 (Mar. 6, 2024), https://cic.dc.gov/sites/default/files/dc/sites/cic/page_content/attachments/USP%20Coleman%20II%20Inspection%20Report%20with%20BOP%20Comments.pdf ("Most DC Code offenders interviewed reported frequent lockdowns at the facility, including routine lockdowns each weekend due to staffing shortages" and typical lockdown length of at least 5-6 days or 1-2 weeks); Robert Barton, *Frequent Prison Lockdowns Backfire. I Know From Experience*, Politico (Feb. 10, 2022) https://www.politico.com/news/agenda/2022/02/10/frequent-prison-lockdowns-backfire-00007797.

35.     Residents in general population are not permitted to access 190 water when the facility is locked down, which happens frequently.

36.     Some residents attempt to "filter" the facility's water by placing tissues under taps in their cells as the water flows. Within seconds, the water discolors the tissue and leaves behind a visible residue.

37.     BOP staff and leadership at Coleman II know the water is unfit for human consumption. Nurses and other staff members, including correctional officers, routinely warn residents that the tap water is not safe to drink, but nonetheless offer residents no way to reliably access clean water. At least one nurse has told residents that the BOP knows that the water is contaminated and that Coleman II needs a new water filter, but because it would be too expensive to replace the existing filtration system, nothing has been done. Another member of the medical staff has told at least one resident that, if he values his health, he should not drink the water.

38.     Some correctional officers verbally abuse residents, telling them they must drink contaminated tap water because they are "inmates" and do not deserve clean drinking water.

39.     Upon information and belief, no staff members at Coleman II drink tap water. On a daily basis, residents witness Coleman II staff bringing in safe drinking water from outside the facility. No such options are available to the residents.

40.     In or around summer 2024, federal agents from the Federal Bureau of Investigation ("FBI") and the Department of Justice Office of the Inspector General ("OIG") conducted interviews with Coleman II residents. During those interviews, Coleman II residents informed FBI and OIG agents about the water quality problems, and in response, the agents told residents they knew that Coleman II's water is contaminated.

8

41.     Residents have confronted the Warden, the Assistant Warden, and the Captain about the poor water quality. In the dining hall, residents showed the Warden, the Assistant Warden, and the Captain that the available drinking fountain dispensed water that was visibly yellow. The Warden, the Assistant Warden, and the Captain were unmoved. The Captain asked the residents: "What do you want me to do?"

42.     Residents have submitted dozens of administrative grievances notifying Coleman II and BOP leadership that the water is not safe to drink. Residents receive boilerplate responses stating that the City of Wildwood, which provides Coleman II's water and has its own history of complaints about tap water, has conducted tests indicating that its municipal water meets federal and state water safety standards.

43.     The responses provide no reassurance that the water at Coleman II itself is safe to drink.

44.     This is not the first time that unaddressed water contamination has sickened residents housed at FCC Coleman. In January 2020, women housed at the now-closed Coleman women's camp endured an outbreak of Legionnaires' disease. Publicly-available reporting indicates that at least 18 women were hospitalized for their symptoms. BOP officials initially minimized the outbreak by refusing to provide residents with bottled water and failing to provide affected residents with adequate medical treatment, sometimes dismissing their symptoms as the common cold.[9]

---

[9] Ben Conarck and Carli Teproff, *Worsening Legionnaires outbreak rises to 18 cases at Florida federal women's prison*, Miami Herald (Feb. 5, 2020), https://www.miamiherald.com/news/special-reports/florida-prisons/article239986528.html; Kevin Bliss, *Major Outbreak of Legionnaires' at Coleman Women's Work Camp*, Prison Legal News (Apr. 1, 2020), https://www.prisonlegalnews.org/news/2020/apr/1/major-outbreak-legionnaires-coleman-womens-work-camp/.

**B.  Defendants Unlawfully Rely on the City of Wildwood to Monitor and Treat Coleman II's Drinking Water, Even Though Wildwood Consistently Violates Federal and State Laws Regulating Drinking Water Quality.**

45.    The Safe Drinking Water Act ("SDWA") establishes a federally-mandated, state-administered regulatory framework for the protection of natural sources of drinking water. The Act authorizes EPA to establish minimum standards to protect tap water quality. These standards are known as National Primary Drinking Water Regulations ("NPDWR").

46.    In Florida, the SDWA and NPDWR are administered by the Florida Department of Environmental Protection ("FLDEP").

47.    The SDWA and NPDWR impose obligations on "public water systems," which is defined to include systems "for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals." 42 U.S.C. § 300f.

48.    That definition applies to both the City of Wildwood and FCC Coleman.

49.    FCC Coleman consists of 29 interconnected buildings on a 120-acre site.[10] Upon information and belief, FCC Coleman provides water for human consumption through pipes to at least 15 service connections and to the thousands of residents of the four correctional facilities located there, including Coleman II.

50.    Coleman II is a high-security facility that houses approximately 1,048 adults.[11]

51.    The City of Wildwood supplies FCC Coleman—including Coleman II—with drinking water. Upon information and belief, and as reflected in the responses to

[10] Clark Construction, *Coleman Federal Correctional Complex*, https://www.clarkconstruction.com/our-work/projects/coleman-federal-correctional-complex (last visited August 19, 2025).

[11] *See* Federal Bureau of Prisons: USP Coleman II, https://www.bop.gov/locations/institutions/clp/ (last visited Aug. 19, 2025).

Coleman II residents' grievances, Defendants rely on the City of Wildwood to treat, monitor, and otherwise ensure that the drinking water provided to Coleman II residents complies with federal and state standards. Regardless of Defendants' reliance on the City of Wildwood, Defendants have an independent obligation to comply with federal and state law, specifically to treat, monitor, and otherwise ensure that the drinking water provided to Coleman II residents complies with federal and state standards.

52.    The SDWA and NPDWR require public water systems to monitor and treat drinking water to reduce dangerous illnesses caused by pathogens in the water. *See, e.g.*, 40 C.F.R. §§ 141.52(a), 141.63(c), 141.70(a). One category of those pathogens, microbiological contaminants, includes microbes known as *Cryptosporidium*, fecal coliform, *E. coli*, *Giardia lamblia*, and *Legionella*. These microbes can cause diarrhea, stomach cramps, nausea, headaches, fatigue, and pneumonia-like symptoms. These microbes are present in drinking water when human and animal fecal waste enter surface water or groundwater that is not adequately filtered or treated.

> a.    *Cryptosporidium* is a single-cell microbe. If ingested, it may cause a disease called cryptosporidiosis. Cryptosporidiosis is a common cause of gastroenteritis and, though symptoms are often limited to diarrhea in otherwise-healthy individuals, can lead to severe life-threatening illness in immunocompromised individuals.

> b.    Fecal coliform and *E. coli* are types of bacteria that, if present in drinking water, indicate the possible presence of illness-causing sewage contamination commonly found in human and animal feces.

> c.    *Giardia lamblia* is a parasite that can cause giardiasis, an intestinal infection. Symptoms of giardiasis include diarrhea, abdominal cramps, fatigue, bloating, and weight loss.

11

d. *Legionella*, as described above in Paragraphs 21-25, is a bacterium that causes Legionnaires' disease, a severe pneumonia-like lung infection that has been previously diagnosed within FCC Coleman, including at Coleman II. The disease causes symptoms such as cough, shortness of breath, chest pain or discomfort, high temperature, and flu-like symptoms. If left untreated, Legionnaires' disease can lead to serious complications including lung failure, septic shock, acute kidney failure, and death.

53.     Upon information and belief, Coleman II residents are forced to consume the City of Wildwood's tap water contaminated with microbiological pathogens, including but not limited to *Cryptosporidium*, fecal coliform, *E. coli*, *Giardia lamblia*, and *Legionella*, that are present in concentrations that violate federal and state law.

54.     Upon information and belief, Defendants do not conduct the monitoring, reporting, and treatment of Coleman II's drinking water that is required by federal and state law.

55.     Instead, upon information and belief, and as reflected in the responses to Coleman II residents' grievances, Defendants unlawfully rely on the City of Wildwood to treat, monitor, and otherwise ensure that the drinking water provided to Coleman II complies with federal and state law.

56.     Upon information and belief, Defendants know that the City of Wildwood does not adequately treat, monitor, and otherwise ensure that the drinking water provided to Coleman II complies with federal and state law.

57.     Upon information and belief, Defendants know that the water the City of Wildwood provides to Coleman II routinely contains concentrations of microbiological contaminants in excess of federal and state thresholds.

12

58.    Upon information and belief, Defendants know that the City of Wildwood consistently violates its obligations to monitor and treat its drinking water to maintain concentrations of microbiological contaminants below federal and state thresholds.

59.    Upon information and belief, despite that knowledge and their independent obligations under federal and state law, Defendants neither take steps to further monitor, treat, or otherwise improve the quality of the tap water provided by Coleman II to its residents nor provide Coleman II residents with cost-free alternative sources of safe drinking water.

60.    Publicly-available databases of SDWA violations maintained by the EPA list the City of Wildwood as consistently and repeatedly violating applicable federal regulations. The violations include health-based violations of the Maximum Contaminant Level ("MCL") allowed by the Total Coliform Rule every year from 2013 (the earliest year of violations maintained in the database) until the present day[12] and at least one violation of the Ground Water Rule's requirements regarding *E. coli*.[13]

61.    The City of Wildwood issues Annual Consumer Confidence Reports that summarize the results of its legally-required water quality monitoring. None of those reports indicates that the City of Wildwood has conducted any of the monitoring or testing for microbiological contaminants required by the SDWA and NPDWR. Most reports omit any mention of microbiological contaminants altogether, and the 2023 report admits that the City "failed to complete the required sampling for tap water

---

[12] *See Water System Violation Report*, United States Environmental Protection Agency (PWS ID = 'FL6600331') (searches conducted on August 19, 2025), https://sdwis.epa.gov/ords/sfdw_pub/r/sfdw/sdwis_fed_reports_public/9.

[13] *See Detailed Facility Report*, Enforcement and Compliance History Online, United States Environmental Protection Agency (FRS ID = '110013161906') (searches conducted on August 19, 2025), https://echo.epa.gov/detailed-facility-report?fid=110013161906.

Microbial Testing and therefore were in violation of monitoring and reporting requirements" that year.[14]

62.    The City of Wildwood water-quality problems that impact Coleman II's residents also affect people living beyond the walls of Coleman II.

63.    In the fall of 2022, Wildwood residents reported weeks of brown and yellow water coming out of their taps that left their tubs, toilets, and sinks stained.[15]

64.    In the fall of 2023, complaints about discolored tap water in Wildwood were so widespread that the municipal government offered residents who reported water discoloration a temporary 40% discount on their utility bills.[16]

65.    The City of Wildwood routinely issues "Boil Water Notices," which warn against using tap water for drinking, making ice, brushing teeth, washing dishes, bathing, and preparing food until the Notice has been lifted. Upon information and belief, Defendants do not inform Plaintiffs and the putative class about these Notices, and Plaintiffs and the putative class would not have any feasible way to comply with them, even if they were made aware of them.

66.    Upon information and belief, Plaintiffs and the putative class are forced to drink water that contains concentrations of microbiological contaminants in excess of levels permitted by federal and state law. Those microbiological contaminants pose an unreasonable risk of serious harm to the health of Plaintiffs and the putative class.

---

[14] *See Annual Consumer Confidence Report*, City of Wildwood, https://www.wildwood-fl.gov/water/page/annual-consumer-confidence-report (last visited August 19, 2025).

[15] Jeff Deal and James Tutten, *Wildwood leaders say temporary fix in place after yellow, brown water appears*, WFTV9 (Sept. 19, 2022), https://www.wftv.com/news/local/sumter-county/wildwood-leaders-say-temporary-fix-place-after-yellow-brown-water-appears/VGPV3P6SGVDXZCS7T46JAVDILE/.

[16] Marv Balousek, *Wildwood leaders take steps to improve drinking water quality*, Villages-News (Jan. 9, 2024), https://www.villages-news.com/2024/01/09/wildwood-leaders-take-steps-to-improve-drinking-water-quality/#google_vignette.

### C.    Plaintiffs' Experiences with the Water at Coleman II

#### 1.    Takiem Ewing

67.    Mr. Ewing is a class member currently incarcerated at Coleman II.

68.    Mr. Ewing arrived at Coleman II in approximately March 2023.

69.    The tap water from the sink in Mr. Ewing's cell is yellow and brown. The water also tastes contaminated. When Mr. Ewing drinks the tap water, it causes him stomach pain.

70.    When he can do so, Mr. Ewing drinks 190 water that he cools down with ice. Mr. Ewing knows that the 190 water and ice are made of the contaminated tap water, but he hopes that they contain marginally fewer contaminants than the water that comes out of the sink in his cell.

71.    When repeated lockdowns at Coleman II preclude his access to 190 water, Mr. Ewing must drink water from the tap in his cell.

72.    Mr. Ewing does not have money to purchase bottled water from the commissary.

73.    On one occasion, Mr. Ewing vomited after drinking the tap water in his cell during a lockdown. When he sought medical attention, a facility nurse advised Mr. Ewing not to drink the tap water.

74.    Mr. Ewing filed grievance forms stating the tap water at Coleman II is not safe to drink, tastes bad, and is discolored. He requested to be provided with free bottled water or permission to drink melted ice instead of tap water. Defendants have not granted either of those requests.

75.    Mr. Ewing watches Coleman II staff drink clean water they bring into the facility. He has never witnessed a Coleman II staff member drink the facility's water.

76.    As a result of Defendants' failure to provide him with clean drinking water, Mr. Ewing has suffered, and continues to suffer, physical pain and discomfort,

and mental anguish and emotional distress due to Defendants' past, present, and ongoing acts and omissions reflecting their deliberate indifference to the risks to his health posed by the contaminated tap water at Coleman II.

### 2. Antonio Garcia-Herrera

77.    Mr. Garcia-Herrera is a class member currently incarcerated at Coleman II.

78.    Mr. Garcia-Herrera arrived at Coleman II in December 2023.

79.    The tap water from the sink in Mr. Garcia-Herrera's cell is yellow and brown, tastes metallic, and smells like sewage.

80.    When he can do so, Mr. Garcia-Herrera drinks 190 water. Mr. Garcia-Herrera knows that the 190 water is the same contaminated tap water, just heated up. But he hopes that it contains marginally fewer contaminants than the water that comes out of the sink in his cell.

81.    When repeated lockdowns at Coleman II preclude his access to 190 water, Mr. Garcia-Herrera must drink water from the tap in his cell.

82.    Mr. Garcia-Herrera does not have money to purchase bottled water from the commissary.

83.    As a result of drinking the water at Coleman II, Mr. Garcia-Herrera has experienced problems defecating and urinating. He has also experienced stomach pain, headaches, fatigue, rashes on his back and head, and dizziness.

84.    Mr. Garcia-Herrera has been diagnosed with H. pylori infections on multiple occasions, including on June 5, 2024.

85.    Upon information and belief, Mr. Garcia-Herrera contracted those H. pylori infections from the contaminated tap water at Coleman II.

86.    Mr. Garcia-Herrera has been told by the medical staff at Coleman II that they do not recommend drinking the tap water.

87.    Since his arrival, Mr. Garcia-Herrera has filed grievance forms regarding the tap water at Coleman II, notifying prison officials of the ongoing contamination.

88.    Mr. Garcia-Herrera watches Coleman II staff drink clean water they bring into the facility. He has never witnessed a Coleman II staff member drink the facility's water.

89.    As a result of Defendants' failure to provide him with clean drinking water, Mr. Garcia-Herrera has suffered, and continues to suffer, physical pain and discomfort, and mental anguish and emotional distress due to Defendants' past, present, and ongoing acts and omissions reflecting their deliberate indifference to the risks to his health posed by the contaminated tap water at Coleman II.

### 3.    Johnny Jean

90.    Mr. Jean is a class member currently incarcerated at Coleman II.

91.    Mr. Jean arrived at Coleman II in July 2023.

92.    The tap water from the sink in Mr. Jean's cell is brown in appearance, tastes bad, and has an off-putting chemical smell.

93.    When he can do so, Mr. Jean drinks 190 water. Mr. Jean knows that the 190 water is the same contaminated tap water, just heated up. But he hopes that it contains marginally fewer contaminants than the water that comes out of the sink in his cell.

94.    When repeated lockdowns at Coleman II preclude his access to 190 water, Mr. Jean must drink water from the tap in his cell.

95.    Mr. Jean does not have money to purchase bottled water from the commissary.

96.    As a result of drinking the water at Coleman II, Mr. Jean suffers from a persistent skin rash. He has also experienced headaches and diarrhea after drinking the water.

17

97.     Since his arrival, Mr. Jean has filed grievance forms regarding the water at Coleman II, notifying prison officials of the ongoing contamination.

98.     Mr. Jean watches Coleman II staff drink clean water they bring into the facility. He has never witnessed a Coleman II staff member drink the facility's water.

99.     As a result of Defendants' failure to provide him with clean drinking water, Mr. Jean has suffered, and continues to suffer, physical pain and discomfort, and mental anguish and emotional distress due to Defendants' past, present, and ongoing acts and omissions reflecting their deliberate indifference to the risks to his health posed by the contaminated tap water at Coleman II.

### 4.     Javier Jovel-Aguilar

100.    Mr. Jovel-Aguilar is a class member currently incarcerated at Coleman II.

101.    Mr. Jovel-Aguilar arrived at Coleman II in approximately mid-2024.

102.    The tap water from the sink in Mr. Jovel-Aguilar's cell often looks yellow and brown and smells rancid.

103.    When he can do so, Mr. Jovel-Aguilar drinks 190 water. Mr. Jovel-Aguilar knows that the 190 water is the same contaminated tap water, just heated up. But he hopes that it contains marginally fewer contaminants than the water that comes out of the sink in his cell.

104.    When repeated lockdowns at Coleman II preclude his access to 190 water, Mr. Jovel-Aguilar must drink water from the tap in his cell.

105.    Mr. Jovel-Aguilar does not have money to purchase bottled water from the commissary.

106.    As a result of drinking the water at Coleman II, Mr. Jovel-Aguilar has suffered severe body aches and headaches, sometimes leaving him in bed for days.  He has also experienced stomach issues, including diarrhea, after drinking the water.

107.    Medical staff at the facility have told Mr. Jovel-Aguilar not to drink the tap water.

108.    Since his arrival, Mr. Jovel-Aguilar has filed grievance forms regarding the water at Coleman II, notifying prison officials of the ongoing contamination.

109.    Mr. Jovel-Aguilar watches Coleman II staff drink clean water they bring into the facility. He has never witnessed a Coleman II staff member drink the facility's water.

110.    As a result of Defendants' failure to provide him with clean drinking water, Mr. Jovel-Aguilar has suffered, and continues to suffer, physical pain and discomfort, and mental anguish and emotional distress due to Defendants' past, present, and ongoing acts and omissions reflecting their deliberate indifference to the risks to his health posed by the contaminated tap water at Coleman II.

## CLASS ACTION ALLEGATIONS

111.    Plaintiffs bring this action on their own behalf and, pursuant to Rules 23(a), 23(b)(1), and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of a class consisting of all individuals who currently reside or will reside in the future at Coleman II.

### A. Numerosity/Impracticability of Joinder: Fed. R. Civ. P. 23(a)(1)

112.    The class is so numerous that joinder of all members is impracticable. As of the filing of this complaint, approximately 155,049 individuals are incarcerated in the BOP.[17] Approximately 1,048 individuals are incarcerated at Coleman II.[18] All people incarcerated at Coleman II are entitled, under the Eighth Amendment and

---

[17] Federal Bureau of Prisons Population Statistics, https://www.bop.gov/about/statistics/population_statistics.jsp;#:~:text=155%2C115%20Total%20Federal%20Inmates,Thursday%20at%2012%3A00%20A.M.  (last visited August 19, 2025).

[18] *Id.* (last visited August 19, 2025).

federal law, to be provided with drinking water that does not pose an unreasonable risk of serious harm to their health and does not contain levels of regulated contaminants that exceed the limits set by federal and state law. Due to Defendants' ongoing disregard for serious health risks posed by the contaminated tap water that all Coleman II residents are forced to drink, all current and future Coleman II residents are enduring conditions of confinement in violation of the Eighth Amendment and federal law. The putative class members are identifiable using records maintained in the ordinary course of business by the BOP.

**B.  Commonality: Fed. R. Civ. P. 23(a)(2)**

113.   All current and future Coleman II residents comprising the proposed class are equally subject to the actual or potential deprivation of minimally adequate drinking water and to the risks to their health and well-being resulting from the longstanding and ongoing pattern and practice of systematic unconstitutional and unlawful acts and omissions by Defendants as described in this Complaint.

114.   Thus, common questions of law and fact exist as to all class members. Those common questions include, but are not limited to:

a.  Whether drinking the tap water at Coleman II poses an unreasonable risk of serious harm to Coleman II residents;

b.  Whether Defendants subjectively know that drinking the tap water at Coleman II poses an unreasonable risk of serious harm to Coleman II residents;

c.  Whether Defendants have disregarded and continue to disregard that risk of serious harm to Coleman II residents;

d.  Whether Defendants' failure to provide water fit for human consumption to Coleman II residents violates the Cruel and Unusual Punishments Clause of the Eighth Amendment;

20

e.  Whether Defendants comply with the monitoring and water treatment requirements of the Safe Water Drinking Act and National Primary Drinking Water Regulations; and

f.  Whether the tap water at Coleman II contains levels of contaminants that exceed the maximum quantities permitted by federal and state law in violation of the Safe Water Drinking Act.

**C.  Typicality: Fed. R. Civ. P. 23(a)(3)**

115.   Plaintiffs' claims are typical of the claims of the proposed class, as their claims arise from the same policies, practices, or courses of conduct; and their claims are based on the same theories of law as the class's claims.

116.   Plaintiffs are individual residents at Coleman II who, like all of the people incarcerated at Coleman II, are deprived of their Eighth Amendment right to access drinking water safe for human consumption.

117.   Plaintiffs are individual residents at Coleman II who, like all of the people incarcerated at Coleman II, are forced to drink water with levels of contaminants that exceed the maximum concentrations allowed under federal and state law, in violation of the Safe Water Drinking Act.

118.   Plaintiffs are individual residents at Coleman II who, like all of the people incarcerated at Coleman II, are forced to drink water for which Defendants have not complied with the monitoring and treatment requirements imposed by federal and state law, in violation of the Safe Water Drinking Act.

119.   Plaintiffs and the proposed class they seek to represent have suffered direct injuries, and will continue to be directly injured, by Defendants' unlawful and unconstitutional pattern and practice of failing to provide safe drinking water at Coleman II.

### D.  Adequacy of Representation: Fed. R. Civ. P. 23(a)(4)

120.   Plaintiffs will fairly and adequately represent the interests of the proposed class. They have no interests separate from or in conflict with those of the class as a whole.

121.   Plaintiffs are represented by competent legal counsel with substantial experience in complex civil rights litigation matters, including prisoners' rights litigation and complex class action litigation.

122.   Defendants have acted or failed and/or refused to act on grounds that apply generally to the proposed class, such that final declaratory and injunctive relief is appropriate with respect to the class as a whole.

### E.  Fed. R. Civ. P. 23(b)(1)(A) and (B)

123.   This action is maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(1) because the number of class members is approximately 1,048.[19] The prosecution of separate actions by individuals would create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for Defendants. Additionally, the prosecution of separate actions by individual members could result in adjudications with respect to individual members that, as a practical matter, would substantially impair the ability of other members to protect their interests.

### F.  Fed. R. Civ. P. 23(b)(2)

124.   This action is also maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants' policies, practices, actions, and omissions that form the basis of this Complaint are common to and apply generally to all members of the

---

[19] *See* Federal Bureau of Prisons: USP Coleman II, https://www.bop.gov/locations/institutions/clp/ (last visited Aug. 19, 2025).

class, and the injunctive and declaratory relief sought is appropriate and will apply to all members of the class.

## FIRST CLAIM FOR RELIEF
### Class Declaratory and Injunctive Relief Pursuant to the Eighth Amendment of the United States Constitution (All Defendants)

125.  The named Plaintiffs incorporate by reference as though fully restated herein, the allegations set forth in Paragraphs 1–124 above.

126.  The Eighth Amendment of the United States Constitution prohibits "cruel and unusual punishment." This right includes the right of residents in federal prison to receive drinking water that does not pose an unreasonable risk of serious harm to residents' health.

127.  The tap water at Coleman II is unfit for human consumption and poses an unreasonable risk of serious harm to residents' health. Upon information and belief, it contains concentrations of microbiological contaminants, including H. pylori, *Cryptosporidium*, fecal coliform, *E. coli*, *Giardia lamblia*, and *Legionella* in excess of the levels permitted by federal and state law. After drinking the water, Coleman II residents suffer from stomach pains, headaches, fatigue, skin rashes, and other symptoms of infections caused by those waterborne contaminants. And at least one Coleman II resident has been diagnosed with Legionnaires' disease.

128.  The illnesses caused by those waterborne contaminants threaten the Coleman II residents with potentially life-threatening symptoms and complications.

> a.  H. pylori infections, caused by the *Helicobacter pylori* bacteria, cause stomach pain, bloating, gas, and other symptoms. In approximately 10% to 15% of infections, peptic ulcers develop in the lining of the stomach or small intestine. H. pylori is also a strong risk factor of certain types of stomach cancer.

b.  Cryptosporidiosis, caused by ingesting *Cryptosporidium*, is a common cause of gastroenteritis. Although symptoms are often limited to diarrhea in otherwise-healthy individuals, they can lead to severe life-threatening illness in immunocompromised individuals.

c.  Giardiasis, caused by the parasite *Giardia lamblia*, is an intestinal infection that can lead to diarrhea, abdominal cramps, fatigue, bloating, and weight loss.

d.  Legionnaires' disease, caused by the bacterium *Legionella*, is a severe pneumonia-like lung infection that has been previously diagnosed within FCC Coleman, including at Coleman II. The disease causes symptoms such as cough, shortness of breath, chest pain or discomfort, high temperature, and flu-like symptoms. If left untreated, Legionnaires' disease can lead to serious complications including lung failure, septic shock, acute kidney failure, and death.

129.  Defendants know that the tap water is dangerous. Coleman II residents have submitted dozens of grievances reporting the contaminated water. Residents have told Coleman II staff—including the Captain, Assistant Warden, and Warden— that the water is discolored and unsafe to drink. And staff members refuse to drink the water themselves and warn Coleman II residents not to do so because of the risks to their health.

130.  But, despite their ample subjective knowledge of the serious risks that drinking the water poses to Coleman II residents, Defendants continue to refuse to provide Coleman II residents with clean drinking water.

131.  Defendants' policies, practices, acts, and/or omissions constitute and reflect deliberate indifference to the needs of the individuals who currently reside and

24

will reside at Coleman II for safe water and violate the Cruel and Unusual Punishment Clause of the Eighth Amendment of the United States Constitution.

132.    Defendants' policies, practices, acts, and/or omissions have placed or will place the named Plaintiffs and putative class members at an unreasonable risk of avoidable physical pain and suffering, mental anguish, emotional distress, and the deterioration of their health.

133.    As a direct, foreseeable, and proximate cause of Defendants' unconstitutional policies, practices, acts, and/or omissions in regard to the provision of safe water at Coleman II, the named Plaintiffs and others similarly situated have suffered, are currently suffering, and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury. No adequate, readily available, and complete remedy at law exists to address Defendants' wrongful conduct as described herein. The declaratory and injunctive relief sought herein is necessary to prevent both ongoing and future injury.

## SECOND CLAIM FOR RELIEF
**Class Declaratory and Injunctive Relief Pursuant to the Safe Drinking Water Act (SDWA) Section 1447, 42 U.S.C. § 300j-6 (All Defendants)**

134.    The named Plaintiffs incorporate by reference as though fully restated herein, the allegations set forth in Paragraphs 1-124 above.

135.    The Safe Drinking Water Act ("SDWA") establishes a federally-mandated, state-administered regulatory framework for the protection of natural sources of drinking water. The SDWA authorizes EPA to establish minimum standards to protect tap water quality. These standards are known as National Primary Drinking Water Regulations ("NPDWR"). *See* Title 40 C.F.R. Part 141.

136.    In Florida, the SDWA and NPDWR are administered by the Florida Department of Environmental Protection ("FLDEP").

137.    The SDWA and NPDWR impose monitoring and treatment obligations on "public water systems," which is defined to include systems "for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals."  42 U.S.C. § 300f.

138.    That definition applies to both the City of Wildwood and FCC Coleman.

139.    FCC Coleman consists of 29 interconnected buildings on a 120-acre site.[20] Upon information and belief, FCC Coleman provides water for human consumption through pipes to at least 15 service connections and to the residents of the four correctional facilities located there, including Coleman II.

140.    Coleman II is a high-security facility that houses approximately 1,048 adults.[21]

141.    The SDWA contains a private right of action that allows "[a]ny person" to bring a civil lawsuit against "any person," including governmental entities, who violates the obligations imposed by the SDWA. That private right of action allows plaintiffs to seek declaratory and injunctive relief from SDWA violations. *See* 42 U.S.C. § 300j-8(a).

142.    The SDWA and NPDWR require Defendants and Coleman II staff to monitor and treat the drinking water provided to Coleman II residents for a wide range of potential contaminants, including microbiological contaminants like *Cryptosporidium*, fecal coliform, *E. coli*, *Giardia lamblia*, and *Legionella*. *See, e.g.*, 40 C.F.R. §§ 141.52(a), 141.63(c), 141.70(a), 141.700.

---

[20] Clark Construction, *Coleman Federal Correctional Complex* (last visited August 17, 2025), https://www.clarkconstruction.com/our-work/projects/coleman-federal-correctional-complex.

[21] *See* Federal Bureau of Prisons: USP Coleman II, https://www.bop.gov/locations/institutions/clp/ (last visited Aug. 19, 2025).

143.    Upon information and belief, Defendants have violated and continue to violate those obligations by:

a.    Failing to adequately monitor the drinking water provided to Coleman II residents for a wide range of potential contaminants, including microbiological contaminants like *Cryptosporidium*, fecal coliform, *E. coli*, *Giardia lamblia*, and *Legionella*;

b.    Failing to adequately treat the drinking water provided to Coleman II residents to remove and prevent a wide range of potential contaminants, including microbiological contaminants like *Cryptosporidium*, fecal coliform, *E. coli*, *Giardia lamblia*, and *Legionella*; and

c.    Failing to comply with applicable recordkeeping, notice, and reporting requirements for a wide range of potential contaminants, including microbiological contaminants like *Cryptosporidium, fecal coliform, E. coli, Giardia lamblia, and Legionella*.

144.    As a direct, foreseeable, and proximate cause of Defendants' policies, practices, acts, and/or omissions in regard to the provision of safe water at Coleman II, the named Plaintiffs and others similarly situated have suffered, are currently suffering, and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury. No adequate, readily available, and complete remedy at law exists to address Defendants' wrongful conduct as described herein. The declaratory and injunctive relief sought herein is necessary to prevent both on-going and future injury.

## PRAYER FOR RELIEF

**WHEREFORE**, the named Plaintiffs respectfully pray that this Court:

(a)    Issue an order certifying this action to proceed as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2).

(b)    Approve the undersigned to serve as class counsel pursuant to Federal Rule of Civil Procedure 23(a)(4) and 23(g).

(c)    Issue a judgment declaring that Defendants' policies, practices, acts, and/or omissions as described herein are unlawful and violate plaintiffs' rights under the Constitution and laws of the United States.

(d)    Preliminarily and permanently enjoin Defendants, their subordinates, agents, employees, representatives, and all others acting or purporting to act in concert with them or on their behalf from subjecting Plaintiffs and members of the class they seek to represent to the unlawful and unconstitutional treatment described herein, and issue such injunctive orders as are necessary, and/or appropriate to preclude such conduct on an ongoing basis.

(e)    Appoint a third-party monitor to ensure compliance with the SDWA and Eighth Amendment.

(f)    Maintain ongoing supervisory jurisdiction of this matter in order to monitor and enforce Defendants' full and continuing compliance with the injunctive relief ordered herein.

(g)    Award the named Plaintiffs their reasonable attorneys' fees and litigation costs.

(h)    Grant all such other and further relief as this Court may deem necessary and/or appropriate in the interests of justice.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.


Dated: August 22, 2025                    Respectfully submitted,


                                          */s/ J. Daniel Gardner*
                                          J. Daniel Gardner
                                          Florida Bar No. 58639
                                          SHOOK, HARDY & BACON L.L.P.
                                          Citigroup Center, Suite 3200
                                          201 S. Biscayne Boulevard
                                          Miami, Florida  33131
                                          Telephone:  (305) 358-5171
                                          Facsimile:   (305) 358-7470
                                          jgardner@shb.com

                                          **Counsel for Plaintiffs**